UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

LEVI J. GRIFFIN,

    Plaintiff,

v.                                            Case No. 5:14cv282/RH/CJK

KEYS, et al.,

    Defendants.
_____/

ORDER and
REPORT AND RECOMMENDATION

This matter is before the court upon several motions.  Plaintiff has filed a Motion for Leave of Court to File a Second Amended Complaint (doc. 24)[1] and provided a copy of the proposed second amended complaint (doc. 25).  Plaintiff has also filed a Motion for Default Judgment Against Mario Keys (doc. 34), to which defendant Keys filed a response in opposition (doc. 38).  Plaintiff then moved to strike defendant Keys' response in opposition.  (Doc. 39).  Defendants Keys and Martin subsequently filed a motion to dismiss plaintiff's second amended complaint.  (Doc. 41).  Plaintiff responded in opposition to the motion (doc. 46) and the

---

[1] The references to document and page numbers will be to those automatically generated by the CM/ECF system.

defendants filed a reply to the response (doc. 49). Plaintiff then moved for leave to file a surreply (doc. 52) and moved to strike the defendants' reply (doc. 54).

The matter is referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Upon careful consideration of the record, the parties' submissions, and the relevant law, the undersigned orders that plaintiff's: (1) motion to amend (doc. 24) be granted; (2) motion for leave to file a surreply (doc. 52) be granted; (3) motion for default judgment (doc. 34) be denied and; (4) motions to strike (docs. 39, 54) be denied. The undersigned also recommends that defendants Keys and Martin's motion to dismiss (doc. 41) be granted based on plaintiff's failure to exhaust his administrative remedies. This action, therefore, should be dismissed without prejudice.

    A.    <u>Plaintiff's Motion for Leave of Court to File a Second Amended Complaint</u>

On July 15, 2015, plaintiff moved to amend his complaint. (Doc. 24). The proposed second amended complaint seeks to add claims against the warden of Graceville Correctional Facility, Mark Henery, and Geo Group, a private corporation operating the prison. Plaintiff asserts Warden Henery and Geo Group are liable for the misconduct of their employees through their "deliberate indifference to negligent training/supervision/instruction/oversight." (Doc. 25, p. 10). Plaintiff claims Warden

Case No. 5:14cv282/RH/CJK

Henery and Geo's actions created "an unreasonable risk of danger[.]" (*Id.*)

The court will grant plaintiff's motion to amend. The substantive allegations of the second amended complaint are substantially similar to those found in the amended complaint. *Compare* (doc. 25) *with* (doc. 9). Moreover, the two defendants who have been served in this case–Keys and Martin–moved to dismiss plaintiff's second amended complaint.[2]

B.   Motion for Default Judgment

The record reflects that service on defendant Keys was effected on July 30, 2015. (Doc. 27). Defendant Keys failed to file a response to the complaint within the time allotted under the Federal Rules of Civil Procedure. On September 8, 2015, plaintiff moved for a default judgment as to defendant Keys. (Doc. 34). On September 9, 2015, Keys filed his answer to the complaint (doc. 36) and a response in opposition to the motion for default judgment (doc. 38). Plaintiff then moved to strike the response in opposition. (Doc. 39).

Plaintiff's motion for default judgment (doc. 34) and motion to strike (doc. 39) are denied. Although defendant Keys failed to file a timely response to the complaint,

---

[2] Although defendants Keys and Martin were served with the amended complaint (doc. 9), plaintiff filed his motion to amend and proposed second amended complaint shortly after service was completed.

any ensuing delay lasted only twenty days. Plaintiff's prosecution of this case was not prejudiced by the delay. In addition, "[e]ntry of judgment by default is a drastic remedy which should be used only in extreme situations[.]" *Wahl v. McIver*, 773 F.3d 1169, 1174 (11th Cir. 1985). Denial of plaintiff's motion for default judgment is appropriate in light of the Eleventh Circuit's "strong policy of determining cases on their merits." *Fla. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993).

    C.    <u>Defendants' Motion to Dismiss</u>

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a former prisoner of the Florida Department of Corrections. Plaintiff initiated this lawsuit on October 27, 2014, by filing a civil rights complaint under 42 U.S.C. § 1983. (Doc. 1). At the time the case commenced, plaintiff was incarcerated at Apalachee Correctional Institution. (*Id.*). On July 9, 2015, plaintiff filed his second amended complaint, the operative pleading in this action. (Doc. 25). Plaintiff was subsequently released from prison.[3]

---

[3] Plaintiff was released from FDOC custody on September 19, 2015. *See* http://www.dc.state.fl.us/InmateReleases/, Florida Department of Corrections, Corrections Offender Network, Inmate Release Information Search (last visited January 19, 2016).

Case No. 5:14cv282/RH/CJK

Plaintiff's second amended complaint names three employees of Graceville Correctional Facility as defendants: Warden Mark Henery, Correctional Officer Mario Keys, and Correctional Officer William Martin. (Doc. 25, p. 1-2). The fourth defendant named in the complaint is Geo Group, the private corporation responsible for operating Graceville CF at the time of the events described in the complaint. (*Id.*). The complaint contains the following factual allegations.

Plaintiff was housed in administrative confinement at Graceville CF. (*Id.*, p. 6). Around 3:30 p.m. on September 10, 2014, defendants Keys and Martin were handing out dinner trays. (*Id.*). After plaintiff ate the bread off his tray, he placed the tray back on the tray slot to be picked up. (*Id.*). Keys approached plaintiff's cell and told plaintiff to place the tray back into his cell. (*Id.*). Plaintiff replied "I am finished, can you just sit the tray on the ground outside of my door, so I do not have to get back up when you come back to pick up trays." (*Id.*). After Keys said "no," plaintiff informed Keys that plaintiff would "not get back up to place the tray on the tray slot when [Keys] returned for it." (*Id.*). Plaintiff told Keys he would give the tray to Keys when it was time to go to the showers. (*Id.*). Plaintiff placed the tray in the corner of his cell. (*Id.*). Keys returned to plaintiff's cell around twenty seconds later and "demanded the tray." (*Id.*). Plaintiff told Keys he was not getting back up to give

Keys the tray. (*Id.*). Keys summoned Martin over to plaintiff's cell and opened the cell door without handcuffing plaintiff. (*Id.*). While Martin remained at the cell door, Keys entered plaintiff's cell and demanded plaintiff get up and return the tray. (*Id.*, p. 6-7). Plaintiff "refused because Keys was inside his cell, so [Keys] could [have retrieved] it." (*Id.*, p. 7). Keys then "violently" slapped plaintiff in the "head-neck region" three consecutive times. (*Id.*). Keys again demanded that plaintiff get up and hand Keys the tray. (*Id.*). Plaintiff "refused to stand up, as he was disoriented and dizzy." (*Id.*). Keys then handcuffed plaintiff and placed him in the shower directly next to his cell. (*Id.*). Keys and Martin proceeded to "trash" plaintiff's cell and destroy his personal property, including an MP4 player, ear buds, and batteries. (*Id.*). As a result of this incident, plaintiff claims he suffers from pain, "emotional distress, mental anguish, loss of enjoyment for life, severe difficulty in mobility in neck-shoulder region, and [appetite] problems." (*Id.*, p. 8). Plaintiff "further developed a sleeping disorder, migraine headaches, self esteem issues, and probable permanent disfigurement[.]" (*Id.*).

Based on the alleged incident, plaintiff claims the defendants violated a number of federal and state laws. (*Id.*, p. 14). He requests $50,000 in compensatory damages and $50,000 in punitive damages from each defendant, as well as fees, costs, and all

other relief deemed proper.  (*Id.*).

Defendants Keys and Martin have moved to dismiss the second amended complaint, claiming plaintiff failed to exhaust his administrative remedies before commencing this action.[4]  (Docs. 41, 42, 49).  Plaintiff has responded in opposition.  (Docs. 46, 53).

## DISCUSSION

Exhaustion Requirement

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  28 U.S.C. § 1997e(a).  Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25 (2002) ("Beyond doubt,

---

[4] Defendants Keys and Martin filed their motion to dismiss after filing an answer to the second amended complaint.  Plaintiff has not objected to the timeliness of the motion.  Regardless, the court has the authority to construe the motion as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  *See Skrtich v. Thornton*, 280 F.3d 1295, 1307 n. 13 (11th Cir. 2002) (noting that a district court may construe a motion to dismiss that was filed after an answer as a request for judgment on the pleadings pursuant to Rule 12(c)); *Poole v. Life Ins. Co. of North America*, 984 F. Supp. 2d 1179, 1185 (M.D. Ala. 2013) ("[I]n the interest of judicial economy, the court will treat LINA's untimely motion to dismiss as a Rule 12(c) motion for judgment on the pleadings."); *Cooper v. Anh Duong*, Case No. 1:07cv114-MP-GRJ, 2010 WL 5872403 (N.D. Fla. Nov. 1, 2010) *report and recommendation adopted by* 2011 WL 741491 (N.D. Fla. Feb. 23, 2011) (granting defendant's motion for judgment on the pleadings based on plaintiff's failure to exhaust administrative remedies).

Case No. 5:14cv282/RH/CJK

Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth*, 532 U.S. at 734. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See id.* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81 (2006); *see also id.*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing

suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida Department of Corrections require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010).

Procedure for Ruling on Motion to Dismiss for Failure to Exhaust Administrative Remedies

In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"). The court held that the defense of failure to exhaust should be treated as a matter in abatement. *Id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss, or be treated as such if raised in a motion for

summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendants' motion, and those in the plaintiff's response. *Id*. If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*.; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

Plaintiff's Administrative Grievances

Plaintiff was required to exhaust his administrative grievances before October 27, 2014, the date he turned his initial complaint over to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.). Defendants assert plaintiff failed to exhaust the administrative remedy process concerning the September 10, 2014 incident with defendants Keys and Martin. (Doc. 41). Defendants claim the second amended complaint must be dismissed because exhaustion is a mandatory pre-condition to filing suit. (*Id.*).

After the alleged incident on September 10, 2014, plaintiff filed a grievance with Chad Anderson, an investigator with the Office of Professional Responsibility.[5] (Doc. 42-1, p. 2; doc. 46, p. 1-2). The complaint resulted in an investigation by the Office of Professional Responsibility concerning potential staff misconduct. (Doc. 42-1, p. 2, 4-8). On September 12, 2014, Anderson conducted an interview with plaintiff and recorded his statement. (Doc. 42-1, p. 5; doc. 46, p. 1-2). Anderson

---

[5] Defendants assert Anderson received a verbal complaint from plaintiff. (Doc. 42-1, p. 2). Plaintiff contends he filed a grievance with "the Office of the Inspector General, Chad Anderson[.]" (Doc. 46, p. 1-2).

Case No. 5:14cv282/RH/CJK

completed his investigation on February 17, 2015, and found, based on the preponderance of the evidence, that Keys did not physically abuse plaintiff. (Doc. 42-1, p. 7).

Plaintiff asserts the referral of his allegations to an investigator "exhausted all available administrative remedies." (Doc. 46, p. 1-2). To support his claim, plaintiff points to responses he received to two grievances.[6] (*Id.*, p. 1-2, 4-5). The first, a formal grievance response dated July 14, 2015, states, "The allegations that you are making in this grievance have already been reported to the Office of the Inspector General; once allegations are reported this institution cannot address those allegations. . . . Grievance Denied." (*Id.*, p. 4). Defendants assert the response confirms plaintiff was required to complete the grievance process because it advised plaintiff he could appeal the denial of the grievance to the Office of the Secretary. (Doc. 49, p. 4; doc. 46, p. 4). Plaintiff claims the response only indicated an appeal was available because it addressed other issues besides the officer assault. (Doc. 53, p. 2-3).

The second grievance response plaintiff has provided to support his claim of proper exhaustion states:

---

[6] Based on plaintiff's affidavit, the court assumes these responses were prompted by grievances concerning the alleged staff abuse on September 10, 2014. (Doc. 46, p. 6).

Case No. 5:14cv282/RH/CJK

> Your Request for Administrative Remedy or Appeal has been reviewed, evaluated, and responded to as follows: Your allegations have been sent to the Inspector General's Office for review. Consider only the review of your allegations as being approved. Grievance Approved.

(Doc. 46, p. 5). The approval of a grievance exhausts the administrative remedy process. *See Henderson v. Langenbrunner*, Case No. 2:09cv149-FtM-36DNF, 2010 WL 1408371 *6 (M.D. Fla. 2010) (finding inmate exhausted his administrative remedies when his grievance was approved). Furthermore, this grievance response did not advise plaintiff that an appeal was available. The grievance response, however, is dated November 17, 2014. (Doc. 46, p. 5). Plaintiff commenced this action on October 27, 2014. Because plaintiff did not receive the response approving his grievance before he initiated this action, it does not establish he properly exhausted his available administrative remedies before bringing suit. *See Smith v. Terry*, 491 F. App'x 81, 82 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint.").

In addition, contrary to plaintiff's assertion, the referral of his allegations to an investigator does not constitute proper exhaustion. Plaintiff is essentially arguing that complying with the grievance process would have been futile because institutional staff cannot address allegations of abuse that have been referred to the Inspector

General's Office. A prisoner's claim that utilizing the grievance process is futile, however, does not excuse the prisoner from complying with that process. *See Alexander v. Hawk*, 159 F.3d at 1325 ("the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA"). Thus, despite the initiation of an investigation by Mr. Anderson, plaintiff was required to complete the grievance process provided by the FDOC.[7] *See Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000) (holding that "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit"); *Schlicher v. Fla. Dep't of Corr.*, 399 F. App'x 538 (11th Cir.2010) (rejecting prisoner's argument that writing letters to the Secretary of the FDOC, a federal judge, and the inspector general, and making verbal complaints to various prison officials, were sufficient to satisfy the exhaustion requirement). Plaintiff's failure to comply with the FDOC's grievance procedure

---

[7] Even assuming Anderson's investigation somehow supplanted the three-step grievance process provided by the FDOC, plaintiff did not wait until the investigation was complete before initiating this action. Plaintiff filed his civil rights claim on October 27, 2014. (Doc. 1). Inspector Anderson, however, did not complete his investigation until February 17, 2015. (Doc. 42-1, p. 15). *See Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").

Case No. 5:14cv282/RH/CJK

requires that this action be dismissed without prejudice. *See Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) ("'a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating'") (citation omitted).

In a related argument, plaintiff contends Anderson's decision to transfer him to a different correctional institution was a satisfactory resolution to his complaints of staff abuse. (Doc. 53, p. 3). Plaintiff suggests he did not need to complete the grievance process because he is only required to "appeal unsatisfactory decisions." (*Id.*). Although plaintiff's transfer may have prevented any future incidents between him and Keys, it did not resolve his allegations of staff abuse. Anderson's February 17, 2015 report "determined CO Keys did not physically abuse" plaintiff, a conclusion plaintiff clearly disputes. Moreover, plaintiff's decision to seek damages in this action also indicates a transfer was not the only relief he sought. *See Booth v. Churner*, 532 U.S. 731 (2001) (holding prisoner must complete any prison administrative process, even when seeking only monetary damages which are not available through the grievance process). Plaintiff's transfer, therefore, did not absolve him from exhausting his administrative remedies.

In support of a showing that the grievance process was available to plaintiff following the alleged abuse, defendants have submitted a grievance plaintiff filed challenging a disciplinary report. (Doc. 41, p. 8; doc. 42-1, p. 9-11). The grievance was filed on September 16, 2014, six days after the alleged staff abuse. Plaintiff claims this grievance does not prove the grievance process was available because:

> insignificant complaints are reviewed, recorded, and replyed [sic] to. However, significant complaints such as guard assaults are not logged for the reason to claim the inmate did not exhaust admin remedies. In other words, complaints go through a screening process in which significant complaints such as complaints that have the potential for judicial liability, are disregarded as a tactic to later claim the institution had no actual knowledge of the incident. This is to dodge legal liability.

(Doc. 46, p. 2). In essence, plaintiff argues that if a grievance has any arguable merit, the Department of Corrections will make sure such never sees the light of day. Although creative, plaintiff's "screening" theory is contradicted by the grievance responses he has submitted to the court. (Doc. 46, p. 4-5). Those responses demonstrate grievances concerning staff abuse are "logged" and addressed. For example, the November 17, 2014 response "approved" plaintiff's grievance concerning staff abuse. (Doc. 46, p. 5). Here, plaintiff simply filed suit before exhausting the grievance process.

Case No. 5:14cv282/RH/CJK

Plaintiff's release from prison does not affect the undersigned's recommendation in this case. Because plaintiff was a prisoner at the time he filed his complaint, the exhaustion requirement applied to him. *See Cox v. Mayer*, 332 F.3d 422, 424-28 (6th Cir. 2003) (holding that exhaustion requirement applied to former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody).

Plaintiff named two additional defendants in his second amended complaint–Warden Henery and Geo Group. These defendants have not been served with the complaint. Nevertheless, because plaintiff failed to exhaust his administrative remedies before commencing this action, his claims against Warden Henery and Geo Group should be also be dismissed without prejudice. *See Escobar v. Crosby*, 363 F. Supp. 2d 1361, 1366 (S.D. Fla. 2005) (noting dismissal of prisoner's claims against unserved defendants was appropriate based on both the prisoner's failure to effect timely service under Federal Rule of Civil Procedure 4(m) and failure to exhaust administrative remedies).

Accordingly, it is ORDERED:

1. Plaintiff's Motion for Leave of Court to File a Second Amended Complaint (doc. 24) is GRANTED.

Case No. 5:14cv282/RH/CJK

2.	Plaintiff's Motion for Default Judgment Against Mario Keys (doc. 34) is DENIED.

3.	Plaintiff's Motion to Strike (doc. 39) is DENIED.

4.	Plaintiff's Motion for Leave to File a Surreply (doc. 52) is GRANTED.

5.	Plaintiff's Motion to Strike Defendants' Reply (doc. 54) is DENIED.

And it is respectfully RECOMMENDED:

1.	That defendants' motion to dismiss (doc. 41) be GRANTED and this action DISMISSED WITHOUT PREJUDICE.

At Pensacola, Florida, this 20th day of January, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

Case No. 5:14cv282/RH/CJK